## John's Administrator *versus* Pardee et al.

1. The rule that an indorser of a negotiable instrument cannot be a witness to invalidate the instrument to which he was a party, has been the law in this state for over one hundred years, and this rule has not been modified or affected by the Act of April 15th, 1869 (P. L. 30).

2. The reason for the rule is that it is bad policy to allow one, who has put into circulation a commercial instrument, afterwards to aver that there was a taint upon it when it passed through his hands.

April 14th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Luzerne county :* Of January Term 1885, No. 398.

Assumpsit, by the banking house of Pardee and Markle against Harry John, Administrator of Thomas John, deceased, upon a promissory note payable at said banking house, made by Thomas John, deceased, to the order of James Fitzpatrick, and by him indorsed.

On the trial, before RICE, P. J., the following facts appeared : In 1872 the firm of Pardee, Markle and Grier were doing a general banking business in Hazleton, Grier being the resident and general managing partner. Grier retired from the firm in 1881.

The note was dated April 8th, 1876, and was payable four months after date. The maker having died in 1880, this suit was brought against his administrator.

The defendant offered to prove by Col. James Fitzpatrick that about 1872, Pardee, Markle & Grier, acting always through Mr. Grier, entered with the witness into an enterprise to furnish Hazleton with a large hotel. Fitzpatrick was to furnish the land and about forty thousand dollars ; and what was necessary to complete and furnish the buildings, upon the plans and estimates agreed upon, was to be supplied by Pardee, Markle & Grier, who were to take judgments from Fitzpatrick (in whose name the title was to remain) upon the whole property and plant, and to look exclusively to that property and plant for payment. Fitzpatrick paid in his forty thousand dollars, the building was erected upon his land, and the bank advanced the requisite difference, taking judgment notes for the amount thereof, upon that understanding. That, subsequently, in 1876, after the completion of the hotel, Mr. Grier asked Fitzpatrick to give his notes with indorsement for the amount so advanced, and for which the firm already held his judgment notes, in order, as he explained, that the transaction might look more regular upon the books of the bank. Col. Fitzpatrick expressed his willingness to put his own notes in the bank, but refused to give such notes with indorsements. That shortly after this Mr. Grier came to the said hotel and brought with him Thomas John, the decedent, who knew nothing of the transaction or condition of affairs between Fitzpatrick and Pardee, Markle & Grier, except as they were subsequently stated to him by Mr. Grier. That Mr. Grier then stated the foregoing facts to Mr. John, produced the promissory note ready for signature, and asked John to sign it, telling him that it was only a form, that he, John, would not be

liable on it, and that the firm looked only to Fitzpatrick, who had already received the money. That at first John was unwilling to sign the paper but finally, upon these assurances, did so. This paper being the promissory note sued upon.

It was also offered to show that Pardee, Markle & Grier, in September or October, 1876, purchased at sheriff's sale, upon executions issued by them, the entire property and plant of the said hotel, for four thousand eight hundred and fifty dollars (applied on their judgments), and that the value of the property so acquired by them, was greater than the aggregate sum advanced by them to Fitzpatrick, together with legal interest thereon, showing that, both directly, and by virtue of their agreement to look to the said property exclusively, they were thus paid in full.

The court below, upon objection, excluded the offer upon two grounds: (1) Because the witness, Fitzpatrick, was the payee and indorser of the note in suit, and as such was not a competent witness to impeach the original validity of the note in a suit by indorsees. (2) The cause of action being a negotiable promissory note, upon which suit was instituted by the indorsee for value, no parol testimony is admissible to impeach the original validity of the note. (First assignment of error.)

Defendant then offered in evidence release from the defendant to the witness for all liabilities arising out of the said note, and from all costs and damages that might accrue or be recovered in any action or actions brought thereon, and thereupon renewed his written offer No. 2, which offer was again excluded. (Second assignment of error.)

Defendant also offered to show that the note in question was retained in the bank of Pardee, Markle & Grier long after its maturity, without any attempt to collect it. That the book-keeper of the firm, in the course of his employment, asked Mr. Grier what disposition he should make of the note in question, and Grier (then being the managing partner of the plaintiff firm) replied that it was "fixed," and after a while he, said book-keeper, could charge it to the "Central estate account," meaning the account of moneys invested with Fitzpatrick in the enterprise of the Central hotel. This offer was also excluded. (Third assignment of error.)

From the testimony of the book-keeper of plaintiff, it appeared that the note had never been charged to the account of Thomas John, that in a conversation with Grier about the time of its maturity the latter said that it would probably be disposed of in the real estate account, which represented the cost of the different properties owned by the firm. Defendant then renewed his first offer, which was again excluded. (Fifth assignment of error.)

James Fitzpatrick, the indorser of the note, testified that it was paid, that he gave judgments which he supposed covered everything, that it was paid by judgments and property. Plaintiff introduced evidence in rebuttal showing that no judgment was confessed by Fitzpatrick to the firm, after the note in question became due. The defendant in sur-rebuttal offered to show by Fitzpatrick, that the judgments referred to had been paid and included the note in suit. Objected to as not sur-rebuttal. Objection sustained and evidence excluded. Exception. (Sixth assignment of error.)

Defendants further offered to show sales of Fitzpatrick's real and personal property to Pardee, Markle & Grier, upon executions issued on their own judgments, for the sum of $4,850. Offer excluded. (Seventh and eighth assignments of error.)

The plaintiffs presented the following points :

1. That there is no evidence in this case showing that the note in suit has been paid, or any evidence from which the jury would be warranted in inferring that the same has been paid, and therefore the verdict must be for the plaintiff.

*Answer.* Affirmed. (Twelfth assignment of error.)

2. That under all the evidence in the case the verdict must be for the plaintiff.

*Answer.* Affirmed. (Thirteenth assignment of error.

The defendant presented, inter alia, the following point :— That if the jury believes the testimony of Col. Fitzpatrick that the note in suit was paid in full, plaintiff cannot recover in this action.

*Answer.* Refused. (Eleventh assignment of error.)

The court further charged the jury :—" We hold, and it is a principle of law, that an indorser of a negotiable instrument of this kind who has given it currency is not a competent witness to invalidate it. He is not competent, by reason of the policy of the law, to go upon the witness stand and testify that it was not a valid note when it was given. Hence his testimony upon this subject was rejected, and therefore, there is no evidence before you as to that branch of the case." (Ninth assignment of error.)

" Upon being called and asked the general question whether he paid the note, he stated he had paid it by judgments and property. Now, the question arises, whether that evidence is such as would warrant the inference that the note had been paid. Payment is a question of law. It results as conclusion of law from certain facts. A witness may testify to facts from which, if they warrant it, a conclusion of law arises that the debt has been paid, but we think no such conclusion arises from the testimony in this case. James Fitzpatrick was in-

[John's Adm'r v. Pardee.]

dorser of a note. The fact that he gave judgment, if he did give judgment, would not be a discharge in itself of the maker; because the holder of the note might sue both the maker and indorser, obtain judgment against both of them, and until he had satisfaction of his debt neither would be discharged. Hence mere testimony that the indorser had given a judgment would not discharge the maker, Thomas John, from his obligation to pay the note. He states further he paid it by judgments and property; this as we regard it, is testimony of a legal conclusion, and not as to matter of fact." (Tenth assignment of error.)

Verdict for the plaintiffs for $9,733.75, and judgment thereon. Defendant took this writ of error, assigning for error the exclusion of the evidence as above noted, the answers to the above points and the above portions of the general charge of the court.

*J. Vaughan Darling* (with whom were *E. P. Darling* and *John Lynch*), for plaintiff in error.—The evidence contained in the first offer, was competent: Phillips *v.* Meily, 15 W. N. C., 225, but the objection was taken to the competency of the witness, who was an indorser of the note and this was sustained on the authority of Walton *v.* Shelley, 1 T. R., 300, and the authorities in this state following that case. The authority of this case, which has been overruled in England, has been materially qualified here: See Hawkins *v.* Cree, 1 Wright, 494; Parke *v.* Smith, 4 W. & S., 287; Work *v.* Case, 10 Casey, 138; and Hepburn *v.* Cassel, 6 S. & R., 116. The tendency of legislation in this state is to make all objections go to the credit rather than to the competency of the witness: Act of April 15th, 1869: Bank of Harrisburg *v.* Rhoads, 8 Norris, 353. There was evidence to show that the note was not negotiated in the usual course of business, which is sufficient to take the case out of the rule. All the authorities agree that where there is evidence to bring the case within any one of the numerous exceptions to the rule, the party to the instrument then becomes competent to impeach its validity: Hawkins *v.* Cree, 1 Wright, 494; Wilt *v.* Snyder, 5 Harris, 77; Kennedy *v.* Lancaster Co. Bank, 6 Harris, 347.

Whether the sale and purchase of Fitzpatrick's property were intended as payment or not, was a question for the jury: Mehan *v.* Thompson, 71 Me., 492; Melledge *v.* Iron Co., 5 Cush. (Mass.), 170; Hart *v.* Boller, 15 S. & R., 162; Bank of U. S. *v.* Bank of Georgia, 10 Wheat. (U. S.), 333.

*Allan H. Dickson,* (*Henry W. Palmer* with him) for defendants in error.—The witness was clearly incompetent under the

[Franklin Coal Co. v. Bertels.]

rule in Walton *v.* Shelley, 1 T. R., 300, which has been repeatedly recognized in Pennsylvania: Stille *v.* Lynch, 2 Dallas, 194; Gest *v.* Espy, 2 Watts, 267; Harding *v.* Mott, 8 Harris, 472.

A parol agreement made at the time of the execution of the note or bill, that it should not be paid according to its terms, is not admissible in evidence in behalf of the maker or acceptor: Commercial Bank *v.* Henninger, 9 Out., 496; Phillips *v.* Meily, 10 Id., 536. In the absence of any evidence of facts showing an intention to take the property in absolute payment, or of any evidence of an agreement for extinguishment of this debt, or of any merger in law of the security, how could the court submit the question of payment to the jury without abdicating its functions as a court? League *v.* Wasing, 4 Norris, 246; Eby *v.* Hoopes, 10 W. N. C., 315; Wallace *v.* Fairman, 4 Watts, 378.

The opinion of the court was delivered April 27th, 1885.

PER CURIAM.—The rule in Walton *v.* Shelley, was adopted as sound law in this state nearly one hundred years ago. It has continued to be followed ever since. It was so held up to the passage of the Act of 1869 and was not changed by that Act. Even if it was a new question there is great force in declaring it would be bad policy to permit one, who by his indorsement, has put into circulation a commercial instrument, afterwards to aver there was a taint upon it at the time it passed through his hands. We still adhere to the rule. All the evidence given and offered is insufficient to lay any foundation for making Fitzpatrick competent to testify to the facts for which he was offered.

Judgment affirmed.